

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                                              )
9    GLACIER WATER COMPANY, LLC, *et al.*,    )        No. C08-1705RSL
                                                              )
10                                      Plaintiffs,          )
                                                              )
11                        v.                                )        ORDER GRANTING IN PART
                                                              )        DEFENDANTS' MOTION FOR
12   ROBERT EARL, *et al.*,                           )        SUMMARY JUDGMENT
                                                              )
13                                      Defendants.      )
_____)

14

15        This matter comes before the Court on "Defendants' Motion for Summary

16   Judgment." Dkt. # 51. Summary judgment is appropriate when, viewing the facts in the light

17   most favorable to the nonmoving party, there is no genuine issue of material fact that would

18   preclude the entry of judgment as a matter of law. Addisu v. Fred Meyer, Inc., 198 F.3d 1130,

19   1134 (9th Cir. 2000). The party seeking summary dismissal of the case "bears the initial

20   responsibility of informing the district court of the basis for its motion" (Celotex Corp. v.

21   Catrett, 477 U.S. 317, 323 (1986)) and identifying those portions of "the pleadings, the

22   discovery and disclosure materials on file, and any affidavits" that show the absence of a

23   genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its

24   burden, it is entitled to summary judgment if the non-moving party fails to designate "specific

25   facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. "The mere

26   existence of a scintilla of evidence in support of the non-moving party's position is not

1  sufficient:" the opposing party must present probative evidence in support of its claim or

2  defense. <u>Arpin v. Santa Clara Valley Transp. Agency</u>, 261 F.3d 912, 919 (9th Cir. 2001); <u>Intel</u>

3  <u>Corp. v. Hartford Accident & Indem. Co.</u>, 952 F.2d 1551, 1558 (9th Cir. 1991).  In other words,

4  "summary judgment should be granted where the nonmoving party fails to offer evidence from

5  which a reasonable jury could return a verdict in its favor."  <u>Triton Energy Corp. v. Square D</u>

6  <u>Co.</u>, 68 F.3d 1216, 1221 (9th Cir. 1995).

7  Having reviewed the memoranda, declarations, and exhibits submitted by the

8  parties and taking the evidence in the light most favorable to plaintiffs,[1] the Court finds as

9  follows:

10  **A. BREACH OF CONTRACT**

11  Defendants argue that plaintiffs' breach of contract claim fails because

12  (1) defendants never assented to the Asset Purchase Agreement ("APA"); (2) Robert Earl and

13  Aqua Holdco LLC are not parties to the APA; and (3) defendants had the absolute contractual

14  right to walk away from the deal.[2]

15  **1. Existence of a Contract**

16  Defendants argue that, because they never gave plaintiffs a signed copy of the

17  APA, they never manifested an intent to be bound by its terms.  This argument has no support in

18  fact or in law.  Manifestation of assent requires either an acknowledgment of a promise or

19  performance under the terms of the agreement.  <u>See</u> Restatement (Second) of Contracts § 18.

20  Defendants did both.  Defendants drafted the APA, presented it to plaintiffs for their signature,

21

22      [1]  As is generally the case, many of the documents and events giving rise to this dispute are
23  subject to more than one interpretation.  Taken in the light most favorable to plaintiffs, the evidence
     amply supports the interpretation proffered by plaintiff John Destito in his declaration (Dkt. # 64).

24      [2]  Defendants also argue that plaintiffs' breach of contract claim is barred because plaintiffs have
25  not fulfilled conditions precedent.  Reply at 8.  Because this argument was raised for the first time in
     reply, plaintiffs have not had an opportunity to respond.  The Court has not, therefore, considered this
26  argument.

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT          -2-

1    and subsequently signed the contract.  Although plaintiffs did not receive a signed copy of the

2    APA until after this lawsuit was filed, plaintiffs were informed in February 2007 that the

3    document had been signed, and the parties undertook due diligence, made disclosures, and

4    generally proceeded toward closing as contemplated by the APA.  Based on these facts,

5    defendants manifested their assent through both a promise and performance.  The fact that Earl

6    subjectively intended to reconsider his participation in the venture after his "compliance

7    committee" had vetted Destito and his company is irrelevant:  mutual assent is determined by the

8    parties' objective acts and outward manifestations.  See Brotherson v. Prof'l Basketball Club,

9    604 F. Supp.2d 1276, 1283 (W.D. Wash. 2009).

10           **2.  Incorrect Parties**

11           The APA was signed by John Destito as manager of Glacier Water Company LLC

12   and Robert Earl as manager of Mountain Water LLC.  Plaintiffs apparently concede that Aqua

13   Holding LLC, an entity created after the APA was signed for the purpose of submitting the April

14   2007 water rights application, cannot be held liable under a breach of contract theory.  Plaintiffs

15   argue, however, that defendant Earl is a party to the contract because Mountain Water LLC was

16   merely a shell, without real substance or form, created as Earl's alter ego for purposes of this

17   transaction.

18           Under both Florida and Washington law, the individual members of an LLC

19   cannot be held liable for the debts or actions of the LLC simply because they are members or

20   managers of the corporation.  The independent existence of an LLC will be ignored, however,

21   when a member dominates the LLC's existence and uses the entity for an improper purpose.

22   Seminole Boatyard, Inc. v. Christoph, 715 So.2d 987, 990 (Fla. Dist. Ct. App. 1998).  See also

23   Meisel v. M&N Modern Hydraulic Press Co., 97 Wn.2d 403, 410 (1982); Norhawk Investments,

24   Inc. v. Subway Sandwich Shops, Inc., 61 Wn. App. 395, 399 (1991).

25           Based on the evidence submitted by the parties, one could reasonably infer that

26   Earl abused the corporate form by ignoring the distinctions between himself and his various

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT          -3-

1  entities for his own benefit and for the purpose of injuring, if not defrauding, the other LLC

2  members.  There is no evidence that Mountain Water LLC has any existence separate from

3  defendant Earl:  no tax returns were filed on its behalf, it has no employees other than Earl as

4  manager,[3] and it has no assets.  Based on the evidence provided, one could infer that Mountain

5  Water could not satisfy obligations, conduct business, or otherwise interact with its members

6  except as directed and controlled by Earl.  There is also evidence that could support a finding

7  that, at the time Mountain Water was created, Earl intended to and ultimately did use Mountain

8  Water and Aqua Holdco to obtain control of the water rights application while at the same time

9  limiting his potential liability to the non-existent assets of Mountain Water.  Because the fact

10  finder could reasonably conclude that Earl abused the corporate form, defendant Earl is not

11  entitled to summary judgment on plaintiffs' breach of contract claim.

12          **(3)   Absolute Discretion**

13          Plaintiffs are not arguing that Earl breached the APA by walking away from the

14  deal.  Rather, plaintiffs maintain that, having exercised his right of rescission, Earl was obligated

15  to restore plaintiffs to the relative position they would have occupied but for their participation

16  in the joint venture.  The fact that Earl had absolute discretion to rescind is not, therefore,

17  dispositive of plaintiffs' breach of contract claim.

18  **B. PROMISSORY ESTOPPEL**

19          In order to survive summary judgment on their promissory estoppel claim,

20  plaintiffs must provide evidence from which a reasonable fact finder could conclude that: (1) a

21  promise was made which (2) the promisor should reasonably have expected would cause the

22  promisee to change its position and (3) which does in fact cause the promisee to change his

23  position (4) in justifiable reliance on the promise and (5) in such a manner that injustice can be

24

25          [3]  The Operating Agreement of Mountain Water LLC calls for the appointment of a board of five
26  managers to run the company.  Nevertheless, it appears that Robert Earl was the only manager appointed
   and that he conducted the business of Mountain Water LLC as if it were a sole proprietorship.

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT          -4-

1   avoided only by enforcing the promise.  <u>King v. Riveland</u>, 125 Wn.2d 500, 506 (1994).

2   Plaintiffs allege that Earl promised that the water rights applications the parties were preparing

3   in 2007 would be filed for the benefit of their joint venture.  Plaintiffs further allege that they

4   relied on that promise when they shared confidential business information and trade secrets with

5   defendants and refrained from filing their own water rights application.  Defendants argue that

6   plaintiffs did not, in fact, change their position in reliance on Earl's promise.[4]

7            Defendants do not dispute that plaintiffs and their expert contributed information

8   to attorney Sarah Mack while she was preparing the water rights applications.  Nor do

9   defendants contest plaintiffs' evidence that they would never have aided a competitor in filing a

10  water rights application and that they would have challenged any such application if filed.

11  Rather, defendants argue that the information plaintiffs provided to Ms. Mack was not helpful.

12  It is not clear to which element of a promissory estoppel claim this argument goes.  Regardless,

13  this issue cannot be decided in defendants' favor as a matter of law.  Plaintiffs have submitted

14  evidence regarding the nature of their disclosures and communications with Ms. Mack, including

15  a series of meetings between plaintiffs' water expert and the attorney regarding "details and gage

16  issues."  One could reasonably infer that Ms. Mack considered and utilized the information

17  provided by plaintiffs when preparing the applications.

18           Defendants also challenge plaintiffs' assertion that they had plans to seek

19  additional water rights.  When taken in the light most favorable to plaintiffs, the evidence

20  supports a finding in their favor.  Plaintiffs had grand plans for Glacia Nova before they met

21  defendant Earl.  Although they lacked the funds and customer base to bring their plans to

22

23  _____

        [4] Defendants fleetingly challenge the existence of a promise, stating that "[a]s an initial matter,
24  Earl's pre-negotiation position is irrelevant."  Reply at 5.  Plaintiffs allege that Earl repeated this
    promise throughout their relationship for the purpose of making plaintiffs feel secure enough to share
25  development plans and site-specific data with defendants.  To the extent that the promissory estoppel
    and breach of contract claims seek the same remedy, plaintiffs may plead alternative theories of relief
26  depending on the fact-finder's determinations.

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT            -5-

immediate fruition, the long-term goal was to increase production far beyond what their existing water rights could support. Thus, a new water rights application was in the offing at least as early as December 2005. The fact that plaintiffs needed to find additional funding sources and marketing opportunities before undertaking the planned expansion does not mean that they did not change their position in reliance on Earl's promises. In the context of this case, plaintiffs' introduction to Earl presented both an opportunity and a threat. With his resources, Earl could provide funding and the potential for new contracts if he worked with plaintiffs. If he set himself up as a competitor, however, Earl would threaten plaintiff's existing niche market as well as their future plans for expansion. Had plaintiffs perceived Earl as a threat, they certainly would not have helped him file a water rights application, they would have opposed his applications before the Department of Ecology, and one could reasonably conclude that they would have rushed ahead with their planned water rights application in an effort to keep Earl at bay. Instead, thanks in part to his promises that the parties would return to their relative pre-APA positions and that he would transfer any application filed on the joint venture's behalf to plaintiffs, plaintiffs changed their behavior in reasonable reliance on Earl's promises.

**C. UNJUST ENRICHMENT**

Plaintiffs allege facts supporting all of the elements of an unjust enrichment claim under Washington law: (1) a benefit conferred, (2) knowledge of the benefit, and (3) circumstances that would make it unjust for defendants to retain the benefit. <u>Young v. Young</u>, 164 Wn.2d 477, 484 (2008). Defendants argue that plaintiffs did not provide anything of value during the entire course of the parties' relationship. Based on nothing more than the course of the parties' relationship which allowed Earl to enter the water industry in the Pacific Northwest, it is highly unlikely that plaintiffs provided nothing of value to the venture. As discussed above, there is at least a factual issue regarding the assistance plaintiffs and their expert provided to attorney Mack when preparing the April 2007 water rights applications. One could reasonably infer from the facts presented that it would be inequitable to allow defendants

1   to retain control of the April 2007 applications.

2          Defendants argue in reply that the unjust enrichment claim fails because plaintiffs

3   have waived any claim to damages in this action.  Because this argument was raised for the first

4   time after plaintiffs had filed their opposition to the motion, plaintiffs were deprived of their

5   opportunity to respond.  Even if the Court were to considered this alternative – and untimely –

6   argument, it is not persuasive.  A claim of unjust enrichment relies on equitable principles:  a

7   promise is implied by the court where none actually exists in order to avoid inequity.  See

8   Auburn Mech., Inc. v. Lydig Constr., Inc., 89 Wn. App. 893, 903-04 (1998).  The appropriate

9   remedy for unjust enrichment is restitution (Town Concrete Pipe of Wash., Inc. v. Redford, 43

10  Wn. App. 493, 499 (1986)), which may be made by returning the property or benefit conferred

11  or by paying its equivalent in money (see Restatement (First) of Restitution § 1, comment a

12  (1937); Restatement (First) of Restitution § 160 (1937)).  Where, as may be the case here, the

13  retention of property would result in the unjust enrichment of defendants, a constructive trust for

14  the benefit of plaintiffs during the period of improper retention, followed by the final transfer of

15  the property to plaintiffs, is the appropriate remedy.  Scymanski v. Dufault, 80 Wn.2d 77, 89

16  (1972).

17  **D.  MISAPPROPRIATION OF TRADE SECRETS**

18         Contrary to defendants' argument, plaintiffs have described the subject matter of

19  the trade secrets at issue with sufficient particularity.  Imax Corp. v. Cinema Tech., 152 F.3d

20  1161, 1164-65 (9th Cir. 1987).  See Opposition at 17.  Although defendants are now taking the

21  position that the technical data and information regarding flow rates and measurements,

22  diversion points, and techniques was publicly available and/or was discounted as untrustworthy,

23  the evidence suggests otherwise.  First, defendants recognized in the APA and other

24  communications that plaintiffs were contributing trade secrets regarding water extraction on the

25  Carbon River (including ideas, know-how, techniques, and technical data), as well as

26  information regarding the water industry in general (such as designs, customer and supplier lists,

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT          -7-

1   pricing and cost information, and marketing).  Second, the information provided included

2   qualitative judgments on the various options available that do not appear to have been part of the

3   public record.  Third, whether the information plaintiffs provided to Ms. Mack was trustworthy

4   and/or helpful cannot be decided in defendants' favor as a matter of law.  Finally, even if the

5   information conveyed did not assist Ms. Mack in filing the April 2007 water rights applications,

6   plaintiffs may be entitled to relief designed to preclude defendants from making any use – past,

7   present, or future – of the trade secrets obtained during their relationship with plaintiffs.

8   **E.  CONSUMER PROTECTION ACT**

9           The Washington Consumer Protection Act ("CPA") prohibits "[u]nfair methods of

10  competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

11  RCW 19.86.020.  A private cause of action exists under the CPA if (1) the conduct is unfair or

12  deceptive, (2) occurs in trade or commerce, (3) affects the public interest, and (4) causes injury

13  (5) to plaintiff's business or property.  Hangman Ridge Training Stables, Inc. v. Safeco Title Ins.

14  Co., 105 Wn.2d 778, 780 (1986).  Defendants argue that plaintiffs are unable to satisfy the first,

15  third, and fourth elements of their CPA claim.

16          Plaintiffs, apparently recognizing that their private dispute regarding control of the

17  April 2007 water rights applications does not impact the public interest, argue that defendants

18  engaged in unfair and deceptive conduct when they (1) filed water rights applications containing

19  incorrect statements of fact and (2) caused attorney Mack to violate her ethical obligations.  The

20  Court finds that neither of these acts affects the public interest for purposes of the CPA.

21          **1.  Misleading Water Rights Application**

22          Plaintiffs argue that the water rights applications filed in April 2007 were

23  misleading because they reference plaintiffs' existing water rights certificate, thereby suggesting

24  that defendants are connected to plaintiffs and/or that defendants control the diversion points

25  listed in the applications.  Assuming, for purposes of this argument, that the information was

26  incorrect at the time it was provided and/or that defendants had a duty to amend the pending

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT          -8-

1  applications when they rescinded the APA, plaintiffs have not identified any case in which the

2  submission of inaccurate information to a governmental entity triggered liability under the CPA.

3  The cases on which plaintiffs rely involve false statements made while advertising a product to

4  the public and are therefore readily distinguished from the regulatory context presented here.

5  Opposition at 21.  The Court declines to reach the novel, and unreasonably expansive,

6  conclusion that every statement made to a government agency affects the public interest.

7  **2.  Inducing Violation of Attorney's Ethical Duties**

8  Plaintiffs argue that, because the Rules of Professional Conduct are designed to

9  protect the public, a violation of those rules adversely affects the public interest.  While this may

10 be true in a holistic sense, it is not the type of "public interest" that generates liability under the

11 CPA.  To establish a cause of action under the CPA, plaintiffs must show that the public has an

12 interest in the specific conduct at issue:  a generalized interest in ensuring that attorneys act

13 ethically is not sufficient.  When determining whether the public interest is affected for purposes

14 of the CPA, the Court considers various factors including "(1) Were the alleged acts committed

15 in the course of defendant's business?  (2) Did defendant advertise to the public in general?

16 (3) Did defendant actively solicit this particular plaintiff, indicating potential solicitation of

17 others?  (4) Did plaintiff and defendant occupy unequal bargaining positions?"  Cotton v.

18 Kronenberg, 111 Wn. App. 258, 274 (2002) (quoting Hangman Ridge, 105 Wn.2d at 790-91).

19 Plaintiffs allege that defendants caused attorney Mack to breach her duties of

20 loyalty and disclosure when they instructed her to file the water rights applications in the name

21 of Aqua Holdco and took the applications for themselves.  Although the alleged conduct

22 occurred in the course of defendants' business, the relationship of the parties is unique and arises

23 out of a purely private contractual arrangement.  The alleged conduct does not involve

24 advertising or the sale of products or services to the public.  There is no reason to suspect that

25 other individuals or corporations are at risk of enduring similar conduct or suffering similar

26 harm.  Nor have plaintiffs alleged that defendants ever engaged in similar business methods

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT          -9-

1  before or since the transaction at issue.  Defendants' instructions to attorney Mack do not,

2  therefore, affect the public interest for purposes of the CPA.

3  **F. INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONSHIPS**

4           Plaintiffs have abandoned their claim that defendants intentionally interfered with

5  their relationships with their water rights expert (Kris Kauffman), a business partner (Sylvester

6  Stallone), the Department of Ecology, and/or Aqua Holdco.  Plaintiffs argue, however, that

7  defendants interfered with their relationships with Mountain Water LLC and attorney Mack for

8  improper purposes or using improper means.  There is a genuine issue of fact regarding

9  defendants' motivation when they directed attorney Mack to file the 2007 water rights

10  applications in the name of Aqua Holdco.  If, as one could reasonably infer from the evidence,

11  this instruction were part of a plan to rescind the APA and seize control of the applications,

12  defendants may have improperly interfered with the plaintiffs' relationship with both Mountain

13  Water and its attorney.[5]

14  **G. DECLARATORY RELIEF**

15           Plaintiffs have raised a genuine issue of fact regarding their right to control the

16  April 2007 water rights applications now pending before the Department of Ecology (or, in the

17  alternative, to have that application withdrawn in favor of plaintiffs' subsequently-filed

18  application).  Should they prevail at trial, a declaration identifying the proper first-in-line

19  application and the controlling entity may be appropriate.

20

21

22           [5] Defendants clearly knew of the inter-relationship of Mountain Water LLC, plaintiffs, and
    attorney Mack.  Whether they understood the ethical implications of that relationship is not the issue.

23

24           In reply, defendants argue that plaintiffs should be precluded from asserting an intentional
    interference claim regarding attorney Mack because that theory was not disclosed in discovery.

25  Plaintiffs' complaint specifically asserts that defendants interfered with the relationship between
    plaintiffs and "the water-rights lawyer."  Complaint at ¶ 51.  Defendants knew such a claim was in play
    when they filed their motion for summary judgment:  the relationship with attorney Mack is the first one

26  discussed.  Motion at 22.

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT          -10-

1    For all of the foregoing reasons, defendants' motion for summary judgment is

2 GRANTED in part and DENIED in part.  Plaintiffs' breach of contract claim against defendant

3 Aqua Holdco LLC is DISMISSED.  Plaintiffs' Consumer Protection Act claim is DISMISSED

4 in its entirety.  Plaintiffs' intentional interference claim is DISMISSED to the extent it was based

5 on plaintiffs' relationship with Kris Kauffman, Sylvester Stallone, the Department of Ecology,

6 and/or Aqua Holdco LLC.  Plaintiffs' other claims may proceed.

7

8    Dated this 30th day of August, 2010.

9

10    *MrS Casnik*
      Robert S. Lasnik
11    United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT          -11-